UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,             CRIMINAL NO. 19-20393

v.                          HON. PAUL D. BORMAN
                               DISTRICT COURT JUDGE
                               HON. DAVID R. GRAND
                               MAGISTRATE JUDGE

D-3 RISHARD COLLINS,

        Defendant.

---

**United States' Response to Collins' Motion for Bond Pending Trial, or in the Alternative, to Conduct a Hearing to Determine His Right to Pre-Trial Release (R. 67)**

---

Rishard Collins, while under both parole and probation supervision, was involved in a conspiracy to distribute controlled substances throughout the Eastern District of Michigan and to smuggle illegal narcotics into prison facilities. During the course of this conspiracy, Collins trafficked illegal substances, routinely possessed and offered to sell illegal firearms, and threatened to kill a co-conspirator and his ex-girlfriend. Collins now claims that his generalized concern over COVID-19 outweighs his demonstrated dangerousness. But because no condition or

1

combination of conditions will ensure the safety of the public and Collins' presence, the Court should deny his motion.  (R. 67: Mot. for Pretrial Release).

## I.       Background and Procedural History

A Grand Jury indicted Mr. Collins for his drug trafficking activities and illegal weapon possession. (R. 1: Indictment). Collins made his initial appearance before the magistrate on July 16, 2019, at which time the parties stipulated to a short adjournment. On July 18, 2019, Collins consented to detention.[1] He was formally arraigned on the following charges, Count 1 – Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, 21 U.S.C. § 841(a)(1); Count 2 – Use of Communication Facility in Facilitating the Commission of Violations of the Controlled Substances Act, 21 U.S.C. § 843(b); Count 3 – Possession of a Firearm in Furtherance of a Drug Trafficking Crime, U.S.C. § 924(c). Collins was also provided notice that he was subject to an enhanced criminal penalty pursuant to 18 U.S.C. § 521 (Criminal Street Gang Enhancement).

The case was assigned to the Honorable Paul D. Borman. Due to the voluminous nature of the discovery and ongoing plea negotiations, the parties have stipulated several times to adjourn the trial date. The case has also been necessarily postponed due to appointment of replacement counsel – including a request for new

---

[1] At the time of his initial appearance Collins was subject to a parole detainer with the MDOC. Collins also has an outstanding probation violation in the Third Judicial Circuit in Wayne County. Per the MDOC website, as of June 8, 2020, the parole detainer is still in effect.

counsel initiated directly by Collins' (R.58: Def. Letter to Court Requesting Appointment of New Counsel).

On April 20, 2020, due to the Covid-19 pandemic, the parties jointly stipulated to an adjournment of the case. Judge Borman granted the adjournment request, and continued the matter indefinitely. (R.66: Order to Continue Trial).

## A.     Background of the Investigation

While monitoring recorded jail conversations, investigators learned that Mr. Collins was engaged in a conspiracy to distribute controlled substances with fellow Vice Lord gang members Keith Spann, Johnnie Ross, and J.T. In addition to trafficking drugs, Collins and his cohorts were orchestrating a plot to smuggle drugs into MDOC facilities using female "stuffers" – women who would hide controlled substances in their vaginal cavity – and then deliver the drugs while visiting with selected inmates.

Further investigation revealed that Collins was also engaged in the potential sale of firearms to prohibited individuals and that he threatened to abduct and murder two acquaintances.

### 1.     July 19, 2016 Arrest for Carrying Concealed Weapon and Possession with Intent to Distribute

On July 19, 2016, officers with the Detroit Police Department (DPD) were surveilling a stolen motor vehicle that they had located to see if the thief would return. Their patience soon paid off, as they observed Collins approach and enter the

3

driver side of the vehicle. As the officers made their presence known, Collins began fleeing on foot. He was soon apprehended, but not before the officers observed him discarding two mason jars of marijuana. Upon returning to the vehicle, the officers also discovered a loaded Glock 17 handgun equipped with a 50 drum magazine loaded with live ammo. Collins was convicted of Carrying a Concealed Weapon and sentenced to one to five years in the MDOC. He was paroled for this offense on April 17, 2018.

### 2.    October 10, 2016 Arrest for Possession with Intent to Distribute

On October 10, 2016, Rishard Collins was driving a motor vehicle when he was pulled over for a traffic violation. At the time of the traffic stop, Collins' license was expired and had 91 suspensions. The officers discovered three bags of marijuana, three digital scales, a large quantity of packaging materials, and a large amount of currency. The vehicle belonged to Collins' co-conspirator Keith Spann. His passenger was his then girlfriend, D.M.

Collins was interviewed, and after initially lying, admitted that he was in fact selling marijuana. D.M. was also interviewed and stated that Collins, "doesn't work, he sells marijuana." Collins pled guilty to misdemeanor possession of marijuana and was sentenced to 45 days in jail.

### 3.    Conspiracy to Smuggle Drugs into MDOC

Agents also uncovered a plot to smuggle drugs into prison facilities. Collins was contacted by incarcerated co-conspirator, Keith Spann, who was orchestrating the plan. Collins was directed to find females willing to hide drugs in their person and then enter the MDOC as visitors. During the visitation, the females would pass over the controlled substances. Below is a summary of a call between Spann and Collins discussing the crime.

12.17.18-Call #23 (12:17)- UVL Keith SPANN contacted COLLINS. COLLINS advised he "Finally just came to the crib this morning but the scribe wasn't there." COLLINS advised his "Auntie" grabbed all the mail and it wasn't there. COLLINS advised he addressed it to the name of "Rashad Davis." COLLINS advised that SPANN should have told COLLINS that SPANN did that. COLLINS is overheard speaking with a female who advised she hasn't seen the letter. SPANN and COLLINS agreed the letter was sent to 11310 Hubbell St. SPANN advised he needed COLLINS to "strap up" about "6 or 7 inches" of his "hoe." COLLINS advised he didn't understand. SPANN asked if COLLINS remembers "what I was doing right." COLLINS advised in the affirmative. SPANN advised "my little white bitch Mary." COLLINS stated "Oh, okay." SPANN advised that she can't take more than "6 or 7 inches." COLLINS stated "Okay." SPANN stated "You gotta strap her up." COLLINS advised that "strapping up" part is where COLLINS is confused. SPANN advised you "got to put it in a condom." COLLINS advised he understood. COLLINS asked if SPANN had a "vehicle" (possibly referring to a female) to which SPANN advised in the affirmative. SPANN advised he would let COLLINS know when the "demo is on" and "she's ready to fuck." COLLINS stated "I got you totally now." SPANN stated "that should be about a fifty-six (56) and all is well." SPANN advised that COLLINS could "pack about two

5

circles in there" also known as "two certs." COLLINS advised to let him know when she's ready and he will "run up in her."

### 4. February 5, 2019 call between Collins and Keith Spann discussing Collins getting Spann a gun

Below is a summary of a call between Spann and Collins where Collins is agreeing to secure a gun for Spann once he is released from prison. Despite the somewhat coded nature of the call, it is clear that Collins is agreeing that the gun he will provide, "a little three-eight special," can be thrown away after Spann uses it, presumably against the person identified as "Golly" in the call.

> 2.5.19-Call #2 (9:15)- UVL Keith SPANN contacted COLLINS. SPANN advised when he gets out he's going to need a "El-Aha" (referring to a firearm) on "deck." COLLINS advised he already had something and wanted to know if SPANN wanted to "get busy wit it right quick." SPANN stated "Yeah." COLLINS stated "Okay, I got that. I got a perfect little throw away for that." SPANN asked about "Golly" (UVL A.G.). COLLINS advised he heard he's been "X'd out." SPANN and COLLINS discussed GOLLY running his mouth about the situation. SPANN advised that GOLLY has been speaking on his (SPANN) name. COLLINS stated "I got a little three-eight special." (referring to a .38 revolver). SPANN stated "All is well." COLLINS discussed how "Hollywood" (UVL R.M. aka Hollywood) always asks for a ride in his car. COLLINS advised he always picks him up and brings him back home when they go out.

### 5. Threat to Abduct and Murder J.T. and D.M. McQueen

While reviewing recorded calls between inmate Keith Spann and Collins, agents discovered an explicit threat by Collins to murder two women. Collins can be heard stating:

> "If I catch J.T., I'm throwing her in the trunk…for real nigga, she going in the trunk, right beside D.M.…Both of them going in the trunk together…Ya'll can have a conversation together before ya'll die…and I'm about to park this bitch and set this bitch on fire with ya'll tied up in the trunk, fuck them hoes!"

The investigation revealed that "J.T." was a former member who had abandoned the conspiracy, and that "D.M." was Collins former girlfriend.

### 6.      Facebook Posts detailing Collins' Drug Trafficking and Illegal Sale of Firearms

A search warrant was authorized for Collins' Facebook account. A review of the account uncovered additional evidence of Collins' drug trafficking:

> On August 17, 2018, Facebook user REDACTED stated "You got some weed?" COLLINS stated "Yea. I'm getting it now." REDACTED stated "Ok. I'm on joy rd and grandriver area." COLLINS stated "What u need." REDACTED stated "15." COLLINS stated "I'm meeting with my mans now give me a 10 to 15 minutes and I'll pull up." REDACTED stated "Ok. 3724 Wager St."

> On November 20, 2018, Facebook use-- stated "U got some weed?" COLLINS stated "What u need." FLAKE stated "8fy." COLLINS stated "I'm bout to go pick some shit up now u wanna ride. I'm bout to pass by you in going on 7 n evergreen area." FLAKE stated "Yea."

The Facebook review also revealed evidence of Collins discussing the sale of a firearm:

> ON January 31, 2019 COLLINS stated "I a mag for sale" (meaning COLLINS has a gun for sale). Facebook user stated "Damn. Don't need it I might kill someone frfr. I aint ready for that." COLLINS stated "That's the plan lol." R.P. then states "I need that bro. I'm about to put in some work. I'm about to get my money up out these niggas and these bitches. Bitch bought a house werth my shit. I'm going to kill one of her kids. Then another one. I'm not playing these bitches want to keep poisoning me. Fuck it is either them or me." COLLINS stated "Man U talking crazy on this bitch u don't pose to say shit like that on messenger. U damn near might as well post it on the book n make the shit public. R.P. stated "Erase it."

## II.    Applicable Law

Under the Bail Reform Act, the Court shall order a defendant detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  In determining whether any such conditions exist, the Court must take into account four statutory factors: (1) the nature and circumstances of the charged offense, including whether it involves a controlled substance or firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his past conduct and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).  The government bears the burden of proving risk of flight by a preponderance of the

evidence, and danger to the community by clear and convincing evidence.  *United States v. Hinton*, 113 Fed. App'x 76, 77 (6th. Cir. 2004) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)); 18 U.S.C. § 3142(f).

When the judicial officer finds that there is probable cause to believe that a defendant committed one of the crimes listed in 18 U.S.C. § 3142(e)(3), however, there is a presumption in favor of detention, which may be rebutted by the defendant. *Id*.  And "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). "Section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the Government retains the 'burden of persuasion.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  "A defendant satisfies his burden of production when he 'com[es] forward with evidence that he does not pose a danger to the community or a risk of flight.'" *Id*. (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).  "Even when a defendant satisfies his burden of production, however, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id*.

## III.    Argument

### A. Collins Fails to Rebut the Presumption of Detention

The government opposes Collins' motion for several reasons. First, while Collins acknowledges that a presumption of detention exists (*Id.* at PageID 172), he fails to overcome the presumption, and does not rebut his danger to the community or flight risk. Mr. Collins has at least five felony convictions, several narcotics related misdemeanors, one domestic violence conviction, is a member of a notorious street gang, and during the commission of the charged offenses was both a non-compliant parolee *and* probationer.

Second, he seeks release because of "his poor health, lock-down conditions, and inability to effectively communicate with defense counsel, and to prepare for trial."(*Id.*, PageID 164). But Collins has not even attempted to identify any specific personal factors that would place him at higher risk of severe illness from COVID-19—rather, he raises a general concern that he may get the virus. This concern does not outweigh the evidence supporting his detention.

In sum, releasing Collins at this time would pose a serious danger to the community, increase the chances that Collins—who was actively on parole and probation at the time these crimes were committed—will not show for future proceedings, and further strain the limited resources of Pretrial Services, the courts, and local law enforcement.

**B.    Factors under 18 U.S.C. § 3142(g) support detention.**

Collins is charged with serious offenses and has a significant criminal history.

A review of the § 3142(g) factors shows that Collins is a danger to the community and a flight risk.

### 1.    Nature and circumstances—18 U.S.C. § 3142(g)(1)

The nature of Collins' offense weighs in favor of detention. He is charged with controlled substance and firearms offenses which are an express factor in favor of detention under Section 3142(g)(1).

Collins' crime is also dangerous by the circumstances. The long standing nature of the conspiracy to distribute illegal narcotics, the inherently dangerous nature of the substances involved (heroin, cocaine, and marijuana) in conjunction with the presence of the firearms speaks to the dangerousness of his activities.

### 2.    Weight of the evidence—18 U.S.C. § 3142(g)(2)

The weight of the evidence "goes to the weight of the evidence of dangerousness and risk of flight, not the weight of the evidence of the defendant's guilt." *See United States v. Watson*, 2010 WL 3272934, at *8 (E.D. Mich. 2010) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)). *See also United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (noting that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community").

Here, the weight of the evidence of Collins' dangerousness and risk of non-appearance is strong.  As noted, he has a long criminal history, was actively on felony parole and probation at the time of the instant offense, and was non-compliant with both – as evidenced by his participation in the charged offenses. Collins has also demonstrated a callous and reckless disregard for the lives of others. As documented above, he cavalierly discusses the abduction and murder of two women, agrees to secure a gun for a prohibited person (Spann) with the understanding it was to be used for violent purposes, and also offers to sell a firearm to another individual who relays to Collins his intent to use it to kill a child.

### 3.    History and characteristics—18 U.S.C. § 3142(g)(3)

Collins has a long and varied criminal history. He has at least five prior felony convictions, including two weapons related convictions. He has also previously violated the terms of his parole and probation status on at least two occasions. He has been convicted of domestic violence.  And he has a demonstrated history of running from law enforcement.

### 4.    Danger to the community—18 U.S.C. § 3142(g)(4)

Collins is a danger to the community. He has been convicted of prior felony firearm and drug crimes – including a conviction for possessing with intent to distribute. In this case, he was involved in the distribution of illegal narcotics as well as conspiring to smuggle controlled substances into prison facilities – using female

"stuffers" who would bear the brunt of any health issues associated with the drugs rupturing inside their body – as well as any criminal culpability if they were discovered. Drug trafficking is a very dangerous crime. *See United States v. Stone*, 608 F.3d 939, 947, n. 6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). *See also United States v. Leon,* 766 F. 2d 77, 81 (2d Cir. 1985) ("[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress's definition of 'danger'")).

Making matters worse, Collins utilized at least one gun in furtherance of the drug trafficking – a firearm equipped with a fully loaded 50 drum magazine – and discussed having access to many more. As the Court is well aware, drug dealing plus firearms is a dangerous combination. Here, Collins is charged with a gun crime that carries a mandatory 5-year sentence.

Finally, we have Collins' statements about abducting and murdering J.T. and D.M. Those statements, in conjunction with the other recorded statements and social media postings detailing Collins' criminal activities, highlight the need to continue detention to protect the community from violence.

## 5. Alternatives to incarceration

Mr. Collins' recommendation that he be placed with a third-party custodian is not feasible based on his past conduct. Again, Collins was on both parole and probationary supervision at the time he committed the charged offenses. Collins

cannot be trusted to abide by the stringent terms of third-party custody – nor can the court be confident that his recommended third-party custodians will appropriately monitor him. This is especially true now when Pretrial Services' resources are stretched to the max, as discussed further below.

### C. COVID-19 Conditions Outside of the Milan Detention Center Do Not Provide Grounds for Collins' Release.

Collins claims that the COVID-19 pandemic subjects him to a health risk and entitles him to release from his confinement. Although the Court may consider a defendant's physical and mental health in its detention decisions, *see* § 3142(g)(3), Collins does not allege that he has contracted COVID-19 or that he has been exposed to any individuals with COVID-19 in the detention center. He also does not appear to fall within an established category of individuals at high risk of developing severe illness from a COVID-19 infection. He is 31 years old, and at the time of his original pretrial services report, Collins reported, and his mother confirmed, he was in good physical health – citing a broken foot in 2010 as his only source of physical ailment. Collins' request for relief is thus based solely on the *possibility* that he may become ill with COVID-19 at some future time while in detention. This speculative concern does not rebut the presumption of detention.

First, while the government recognizes that COVID-19 is a serious health concern, there are currently *zero* cases of COVID-19 among approximately 220 detainees housed at the Milan FDC, and officials at Milan have instituted a number

of precautionary measures to reduce the risk of infection, including restrictions on prisoner movement.  As of June 8, 2020, the Milan Detention Center was reporting the following statistics for COVID-19 illnesses amongst detainees and prisoners housed there:

|  | FDC | FCI |
|---|---|---|
| **CUMULATIVE # INMATES w/ POSITIVE TEST** | 5 | 78 |
| **DEATHS** | 0 | 3 |
| **PENDING RECOVERY** | 0 | 8 |

While, unfortunately, three inmates from the Milan FCI have died after contracting COVID-19, all three suffered from preexisting medical conditions that the CDC lists as risk factors for developing more severe illness from COVID-19,[2] and the FCI at Milan is an entirely separate building from the FDC, where Collins is housed. Collins' concern that he may contract Covid-19 in the future is entirely speculative.

Next, Collins does not suffer from any underlying medical condition that puts him at higher risk of severe illness in the event he should contract Covid-19. To be sure, the CDC has determined, based on currently available information and research, that individuals of all ages with certain "serious underlying medical conditions" might be at higher risk for severe illness from COVID-19, "particularly

---

[2] *See* BOP press releases regarding inmate deaths at FCI Milan:
https://www.bop.gov/resources/news/pdfs/20200424_press_release_mil.pdf;
https://www.bop.gov/resources/news/pdfs/20200427_press_release_mil.pdf;
https://www.bop.gov/resources/news/pdfs/20200501_press_release_mil.pdf.

if [the underlying condition is] not well controlled."[3]  But there is no evidence that Collins suffers from any such condition.

While COVID-19 presents certain risks for all of us, inmates included, Collins is no different than many other detainees who are currently in custody. The speculative prospect of contracting COVID-19 does not diminish the public interest in keeping dangerous offenders off the streets.  Further, releasing inmates to home detention and electronic monitoring, as Collins requests, would place an undue burden on Pretrial Services and expose its officers to greater health risks while attempting to supervise these individuals in the community. According to Pretrial Services, monitoring is next to impossible with the restrictions in place due to the COVID-19 pandemic. The court has advised Pretrial Services and Probation officers to protect themselves from viral infection by staying six feet away from defendants they supervise. The officers cannot conduct home inspections, physical inspections of tethers, or assessments of whether a defendant has an appropriate place to reside. Given these limitations, there is little Pretrial Services can do to determine when and if Collin violates his conditions of release or to bring him into compliance with the court closed.

---

[3] CDC, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Defendant's speculative concerns about possible future transmission in the detention center should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether he is properly subject to pretrial detention. *See United States v. Harris*, No. 19-MJ-30382, Dkt. #20 (E.D.M.I. Apr. 2, 2020) (Cox, J.) (denying defendant's bond revocation motion and noting that the facility where Harris is being held has no reported COVID-19 cases and has implemented measures to prevent the spread of the virus); *United States v. Johnson*, No. 19-CR-20437, Dkt. # 53 (E.D.M.I. Mar. 26, 2020) (Leitman, J.) (denying defendant's motion to revoke detention order, after analyzing statutory presumption and § 3142(g) factors, and noting "based upon the balance of factors described above, the Court is not persuaded that the COVID-19 pandemic justifies releasing [defendant] prior to trial"); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) (rejecting similar argument and noting that "as concerning as the COVID-19 pandemic is," the court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act."); *see also United States v. Raia*, Case No. 20-1033, at 8 (3rd Cir. April 2, 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

In light of the evidence that no conditions will reasonably assure the safety of the community, Collins' release from detention pending sentencing is not warranted and his motion should be denied.

## IV.    The United States Requests a Hearing and Stay of any Order

The government respectfully requests a hearing in this matter. If the Court intends to order the defendant's release without a hearing, the government requests that the parties be notified sufficiently in advance for the government to determine whether it will seek an emergency stay pending a possible appeal to the Sixth Circuit.

## V.    Conclusion

Mr. Collins has already previewed what he will do if released. He will threaten our communities and he will flee. He was already subject to parole and probation supervision when he committed the instant offenses. Now that he has been indicted with charges carrying significant penalties upon conviction, his motivation to flee is exponentially higher. This Court should deny Mr. Collins' motion.

MATTHEW SCHNEIDER
United States Attorney

*s/ Blake S. Hatlem*
BLAKE S. HATLEM
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9613
Dated: June 9, 2020           E-Mail: blake.hatlem@usdoj.gov
Bar No. P58969

**Certificate of Service**

I hereby certify that on June 9, 2020, I electronically filed the United States'

Detention Hearing Appeal and Brief with the Clerk of the Court of the Eastern

District of Michigan using the ECF system which will send notification of such

filing to the following via electronic mail:

James Howard and Craig Daly
*Attorneys for Defendant*

*s/ Blake S. Hatlem*
BLAKE S. HATLEM
Assistant United States Attorney
